IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jason C., ) | Case No.: 0:24-cv-02622-JD-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| Frank Bisignano, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This social security matter is before the Court with the Report and Recommendation of United States Magistrate Judge Paige J. Gossett ("Report" or "R&R"), under Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff Jason C.[1] ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g), as amended, seeking judicial review of a final decision of Defendant Frank Bisignano,[2] Commissioner of Social Security Administration ("Defendant" or "Commissioner"), denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act").

Having carefully considered Plaintiff's objection and the applicable law, the Court affirms the decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano as Defendant here.

1

## I.   BACKGROUND

The Report sets forth the relevant facts and legal standards, which this Court incorporates here without a full recitation. (DE 15.)  However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary.

Plaintiff Jason C. seeks judicial review of the final decision of the Commissioner of Social Security denying his claim for DIB and SSI under Title II of the Social Security Act. Plaintiff filed his application on August 1, 2017, alleging a disability onset date of July 26, 2017. (Admin. R. 178–88.) His claim was initially denied and then reconsidered. (Admin. R. 58–77, 81–98.) Plaintiff requested a hearing on December 19, 2017 (Admin. R. 120–21), and a hearing was conducted on June 4, 2019, before an Administrative Law Judge ("ALJ"). (Admin. R. 410–21.)

On July 2, 2019, the ALJ issued a decision finding Plaintiff not disabled during the relevant period. (*Id*.) The Appeals Council denied review on July 27, 2020, rendering the ALJ's decision the final decision of the Commissioner. (Admin. R. 427–32.) Pursuant to the Commissioner's motion, this action was remanded for further proceedings. (Admin. R. 433-36, 439-40.) On remand, the ALJ was directed to further evaluate the medical opinion evidence submitted by Plaintiff's treating physician, Freddie Wilson, M.D. (Admin. R. 439-40.) The ALJ held another hearing on February 9, 2023, at which Plaintiff, who was represented by counsel, testified, as did an impartial vocational expert. (Admin. R. 383-406.) On May 3, 2023, an ALJ found that Plaintiff was not disabled between July 26, 2017, through the date of the decision. (Admin. R. 362-76). The Appeals Council denied Plaintiff's request for review.

(Admin. R. 348-51.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g). (DE 1.)

The ALJ applied the Commissioner's five-step evaluation process and determined that Plaintiff was not disabled under the Act.[3] The ALJ first concluded that Plaintiff had engaged in substantial gainful activity since July 2020, earning between $8,000 and $11,000 in some quarters and nearly $33,000 annually in 2022. (Admin. R. 365). However, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity before this period and made findings regarding Plaintiff's impairments and limitations before July 2020. (Admin. R. 365.)

Turning to step two, the ALJ found that Plaintiff had one severe impairment, narcolepsy, and found that other impairments, including depressive disorder, were non-severe. (Admin. R. 365-68.) The ALJ further found that none of these impairments were presumptively disabling. (Admin. R. 368-69.) The ALJ then turned to the Residual Functional Capacity ("RFC") assessment and found that Plaintiff had limitations but retained the ability to perform sedentary work, with postural and environmental restrictions. The ALJ concluded that Plaintiff would be off-task for less than 10 percent of the workday in addition to regularly scheduled breaks. (Admin. R. 369.) Applying the RFC finding at steps four and five, the ALJ found that Plaintiff was unable to perform his past relevant work but could perform other jobs, such as assembler, inspector, and table worker. (Admin. R. 373-75; see Admin. R. 53-

---

[3] This process requires an ALJ to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work and, (5) if not, whether he can perform other work. 20 C.F.R. § 404.1520.

54 (vocational expert testimony).) The ALJ found that Plaintiff was not disabled under the Act. (Admin. R. 376.)

## II.    LEGAL STANDARD

The magistrate judge makes only a recommendation to this Court. The recommendation carries no presumptive weight, and the responsibility for making a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection has been made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(l). However, *de novo* review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Absent any specific objection, the court only reviews the report and recommendation for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted); *see also Tyler v. Wates*, 84 F. App'x 289, 290 (4th Cir. 2003) ("A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object.")

The role of the federal judiciary in the administrative scheme established by the Social Security Act is limited. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."[4] 42 U.S.C. § 405(g). The court must uphold the Commissioner's

---

[4]    "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "It

decision as long as it is supported by substantial evidence and reached through the application of the correct legal standard. *See Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). This standard precludes a *de novo* review of the factual circumstances that substitute the court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58. However, the court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Administrative Law Judge ('ALJ')]." *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### III.   DISCUSSION

Plaintiff raises two substantive challenges to the ALJ's evaluation of his narcolepsy in the RFC assessment. As it relates to Plaintiff's first objection, the ALJ found:

> the referenced sleep latency test appears designed to see how fast and how often the patient can fall asleep when given multiple—opportunities to nap,

---

means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

5

> rather than when actively working in a work environment, which would be more a more stimulating setting than when given a specific opportunity to nap in a medical office designed for napping (3F).

(Admin. R. 372.) Plaintiff contends the "ALJ interpreted the results of the test with her questioning of the validity of the testing," while the ALJ "was simply not qualified to interpret this test opposite Dr. Wilson's explanation, without record support." (DE 16 at 3-4.) Further, Plaintiff contends, "it is only the ALJ's own unqualified conclusions that conflicts with the objective diagnostic testing." (*Id*. at 4.) The Court disagrees.

The Court notes the ALJ reasonably concluded that because the sleep test did not occur while Plaintiff was "actively working," it did not accurately reflect Plaintiff's ability to function in a "work environment" with a "more stimulating setting." (Admin. R. 372.) The ALJ properly assessed Plaintiff's RFC—the most he can do in a work setting, despite his limitations. It was reasonable for the ALJ to discount the sleep latency test on the basis that it was conducted in a non-work environment. *See SSR* 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.") Moreover, there is substantial evidence in the record that Plaintiff remained able to perform full-time construction work for much of the period between 2020 and 2023—well after the April 2018 sleep latency test—which suggests that Plaintiff could indeed function better in a work environment than when evaluated in a setting designed for napping. (*See* Admin. R.

6

373 (explaining that Dr. Wilson's opinions were "especially at odds with the claimant's ongoing work through 2017 and resuming in 2020.")

Next, Plaintiff objects based on the Magistrate Judge "not address[ing] the fact that the ALJ failed to explain how she arrived at the less than 10 percent figure for off-task time" in light of the ALJ "allowing for Plaintiff to be off-task less than 10 percent of the workday in addition to regularly scheduled breaks." (DE 16 at 4.) This argument is unavailing. Plaintiff cites to an unpublished district court case for the proposition that "when an ALJ includes an 'off task' limitation in an RFC in the form of a percentage, the ALJ should explain how he or she reached that conclusion." *Armstrong v. Commissioner*, No. 3:23-cv-124, 2024 WL 463311 (W.D.N.C. Jan. 4, 2024), adopted 2024 WL 460262 (W.D.N.C. Feb. 5, 2024).

However, the Fourth Circuit has equally addressed this point. *See Rebecca J. v. Kijakazi*, No. 22-1531, 2023 WL 3970022 (4th Cir. June 13, 2023). *Rebecca J.* makes clear that an ALJ need not provide a formula, expressly adopt a medical opinion, or provide a special discussion to explain an off-task finding. As applied in this case, the ALJ's supporting explanation was sufficient. The ALJ supported the RFC finding with a detailed discussion of the evidence, including objective findings, treatment history, daily activities, and medical opinions bearing on Plaintiff's symptoms, to include Dr. Wilson's records reflecting that Plaintiff's symptoms improved with treatment, i.e., he "responded well to Adderall" and had just occasional cataplexy symptoms, inconsistent with Dr. Wilson's opinion that Plaintiff would require extensive breaks and multiple absences due to ongoing symptoms. (Admin. R. 372-

7

73.) Given this discussion of evidence in the record, the ALJ does not need to provide any additional or special explanation to support the 10 percent off-task limitation.

In sum, the ALJ's RFC determination is supported by substantial evidence and comports with applicable legal standards. The Magistrate Judge's Report reflects a thorough and correct application of the law to the administrative record. Plaintiff's objections do not identify any material error in fact or law warranting remand.

## IV.   CONCLUSION

For these reasons, the Court finds that the ALJ's decision is supported by substantial evidence and was reached through the application of correct legal standards. The Court further finds that the Magistrate Judge properly evaluated the administrative record and appropriately addressed Plaintiff's arguments in the Report and Recommendation.

Accordingly, it is ORDERED that Plaintiff's objections (DE 16) are OVERRULED, the Report and Recommendation (DE 15) is ADOPTED, and the Commissioner's decision is AFFIRMED.

**AND IT IS SO ORDERED.**

                                                            Joseph Dawson, III
                                                            United States District Judge

Florence, South Carolina
July 17, 2025